# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

# BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 2 2 2013

David J. Bradley, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO.B-12-435-S1 |
| vs. | § | |
| TOMAS YARRINGTON RUVALCABA<br>FERNANDO ALEJANDRO CANO MARTINEZ | | |

## UN   SEALED   12-2-13

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## COUNT ONE

### The Enterprise

At various times relevant to Count One

**TOMAS YARRINGTON RUVALCABA**
**and**
**FERNANDO ALEJANDRO CANO MARTINEZ**

Defendants, and others known and unknown to the grand jury, were members and associates of an enterprise, a criminal organization whose members engaged in acts of illegal drug importation and distribution, money laundering, bank fraud, and structuring of currency transactions, and which operated principally in the Southern District of Texas, the Western District of Texas, and the State of Tamaulipas, Mexico.

The organization, including its leadership, membership, and associates, constituted an enterprise as that term is defined by Title18, United States Code, Section 1961(4). The enterprise

1

constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

Purposes of the Enterprise

1.　　The purposes of the enterprise included the following:

a.　To enrich the members and associates of the enterprise through, among other things, the importation and distribution of controlled substances in the United States on an ongoing basis, bribery, and theft of public property.

b. To preserve and protect the proceeds and profits of the enterprise through, among other things, various acts of money laundering and structured currency transactions.

c. To insulate the leaders of the enterprise and its activities from interference by law enforcement.

d. To acquire loans from banks by fraud using false information, front names and shell entities.

Means and Methods of the Enterprise

2.　　Among the means and methods by which the Defendants, their conspirators and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a. Members of the enterprise arranged for the acquisition, storage, concealment, and distribution of large quantities of cocaine and marihuana on an ongoing basis.

b.　Members of the enterprise and their associates arranged for the use of parcels of real estate and the buildings thereon as places of storage for and distribution of controlled substances

2

and the collection of money from sales thereof.

c. Members of the enterprise and their associates used communication facilities to advance the affairs of the enterprise.

d. Members of the enterprise and their associates obtained conveyances including cars, trucks, airplanes, trailers, and tractor-trailer rigs for use in the affairs of the enterprise.

e. Members of the enterprise and their associates arranged to collect, count, store, and distribute the illegal income generated by the enterprise.

f. Members of the enterprise and their associates arranged to disguise, hide, convert, invest, protect, and otherwise launder the illicit profits and proceeds from the enterprise.

g. Members of the enterprise and their associates traveled and caused travel in interstate and foreign commerce.

h. Members of the enterprise and their associates used front names, nominee names, the names of other persons, and the services of other persons to conceal their own participation in the affairs of the enterprise, and the acquisition of assets with proceeds generated by the enterprise. Such nominees names included those of various limited partnerships, limited liability companies, and corporate entities established under the laws of the State of Texas, and business entities established in Mexico.

i. Members of the enterprise and their associates expanded the affairs of the enterprise over time to include new members and associates and new methods needed to insure the ongoing operations of the enterprise.

j. Members of the enterprise and their associates endeavored to maintain control over proceeds gained through the operation of the enterprise.

3

k. Members of the enterprise and their associates engaged in acts of bribery, deceit, counter surveillance, and evasion to protect themselves and assets and proceeds of the enterprise from detection and interference by law enforcement.

l. Members of the enterprise and their associates sought in the State of Tamaulipas, Mexico, the corrupt assistance of law enforcement officers, political leaders, justice sector officials, and military deserters to further the affairs of the enterprise.

m. Members of the enterprise and their associates obtained loans via fraud from banks and other lending institutions.

<u>The Racketeering Conspiracy Violation</u>

From an unknown date, believed to be in the year of 1998, and continuously thereafter up to and including the date of this indictment, both dates being inclusive, in the Southern District of Texas, and elsewhere, and in the jurisdiction of this court

**TOMAS YARRINGTON RUVALCABA**
**and**
**FERNANDO ALEJANDRO CANO MARTINEZ**

Defendants herein, being persons employed by and associated with an enterprise, which was engaged in, and the activities of which affected interstate and foreign commerce, did unlawfully, knowingly, and intentionally conspire, combine, confederate, and agree together and with diverse other persons, known and unknown to the grand jury, to commit an offense against the United States, to-wit: a violation of Title 18, United States Code, Section 1962 [c], that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961 (1) and (5).

4

It was a further part of the conspiracy that the Defendants agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise. The pattern of racketeering activity through which the Defendants agreed to conduct the affairs of the enterprise consisted of multiple acts involving the illegal importation of controlled substances in violation of Title 21, United States Code, Sections 952 and 959, conspiracy to illegally import controlled substances in violation of Title 21, United States Code, Section 963, and acts indictable under Title 18, United States Code, Sections 1344, 1956, 1957, and Title 31, United States Code, Section 5324.

## OVERT ACTS

Pursuant to the conspiracy, the following and other overt acts were committed in the Southern District of Texas and elsewhere:

1.      During the course of the conspiracy there existed a large scale criminal organization known as the Gulf Cartel. The armed branch or "muscle" of the Gulf Cartel was known as the Zetas, which consisted in part of military deserters from the armed forces of Mexico. The headquarters of the Gulf Cartel was Matamoros, Tamaulipas, Mexico, across from the City of Brownsville, Texas.

2.      The Gulf Cartel engaged in numerous criminal activities including the acquisition, possession and distribution of large quantities of controlled substances, including marihuana and cocaine, smuggling of such controlled substances to the United States, extortions, kidnappings and murders.

3.      The primary market for the controlled substances acquired by the Gulf Cartel was the United States. During the course of this conspiracy large quantities of cocaine and marijuana

were smuggled into the United States. Such cocaine and marihuana were distributed in the Southern and Western Districts of Texas, and elsewhere in the United States. Proceeds from this illegal drug activity produced large amounts of U.S. currency which was returned to the State of Tamaulipas, Mexico.

4.     In order to continue their illegal business, members and associates of the Gulf Cartel used portions of the illegal proceeds from the activities noted in paragraphs 2 and 3 above to pay large bribes to high elected officials, and candidates for such high elected office, within the State of Tamaulipas on an ongoing basis. The purpose of such bribes was to allow the members and associates of the Gulf Cartel to continue their illegal business with little or no interference from police authorities operating in the State of Tamaulipas.

5.     The bribes were paid directly to corrupt high elected officials, to other persons in alliance with such corrupt high elected officials, corrupt candidates for high elected office, persons in alliance with such corrupt candidates for high elected office, police authorities, and persons within the justice sector of the State of Tamaulipas. The sources of such bribery payments included the proceeds of the criminal activity of the Gulf Cartel, its members and its associates.

6.     Starting approximately 1998 and continuing thereafter **TOMAS YARRINGTON RUVALCABA**, who was then a candidate for the office of Governor of the State of Tamaulipas, and assisted by corrupt members of the Tamaulipas State Police, received bribes from large drug organizations then operating in Tamaulipas, including the Gulf Cartel. Such bribes were collected by members of the State Police and delivered to the control of Jesus Vega Sanchez and **TOMAS YARRINGTON RUVALCABA**. The amount of such bribes per payment varied, but in total was in the millions of dollars.

7. During the year 1998 **TOMAS YARRINGTON RUVALCABA** directed a conspirator to acquire a luxury condominium for **TOMAS YARRINGTON RUVALCABA** on South Padre Island, Texas, in a front name. A luxury condominium for sale was located at Unit 1401 Bridgepoint Oceanfront Condominiums, 334 Padre Blvd., South Padre Island, Texas. By December, 1998, the negotiation was concluded for a purchase price of $450,000.00. This sum was paid in full by the end of April, 1999. **TOMAS YARRINGTON RUVALCABA** took control of this property, which was titled in the name of a conspirator.

8. **TOMAS YARRINGTON RUVALCABA** was required to pay monthly maintenance fees for Unit 1401, which by the year 2012 exceeded $900.00 per month. A conspirator advanced such sums on behalf of **TOMAS YARRINGTON RUVALCABA**, using at times accounts #xx0509 and #xx1010 established at Wells Fargo Bank and account #1814 established at Lone Star National Bank. These payments continued into March, 2012, with a payment in the amount of $914.50. These payments include the following, drawn on the above noted accounts:

**Account #xx0509**

| Date of Check | Check # | Amount of Payment |
|---|---|---|
| September 9, 2005 | 1495 | $920.00 |
| October 10, 2005 | 1502 | $920.00 |
| November 10, 2005 | 1507 | $2093.37 |
| December 8, 2005 | 1508 | $920.00 |
| January 9, 2006 | 1512 | $920.00 |
| February 1, 2006 | 1517 | $1169.46 |

| | | |
|---|---|---|
| February, 2006 | 1518 | $10,812.50 |
| March 9, 2006 | 1524 | $917.83 |
| April 7, 2006 | 1529 | $943.28 |
| May 10, 2006 | 1531 | $920.00 |
| June 9, 2006, | 1534 | $1,256.73 |
| June 19, 2006 | 1537 | $10,730.13 |
| July 10, 2006 | 1542 | $914.62 |
| July 10, 2006 | 1543 | $5,973.59 |
| August 10, 2006 | 1545 | $950.00 |
| September 11, 2006 | 1556 | $950.00 |
| September 27, 2006 | 1562 | $2,220.18 |
| November 27, 2006 | 1577 | $1,064.62 |
| January 7, 2007 | 1584 | $974.16 |
| January 10, 2007 | 1587 | $914.00 |
| March 7, 2007 | 1594 | $1,399.77 |
| March 31, 2007 | 1597 | $1,545.18 |
| May 9, 2007 | 1601 | $1,089.41 |
| May 24, 2007 | 1607 | $7,620.71 |
| July 5, 2007 | 1614 | $2,077.58 |
| August 8, 2007 | 1620 | $1,159.62 |
| September 1, 2007 | 1623 | $1,019.04 |
| October 4, 2007 | 1632 | $914.62 |

| | | |
|---|---|---|
| October 29, 2007 | 1634 | $936.78 |
| December 5, 2007 | 1636 | $1,090.61 |
| January 8, 2008 | 1644 | $1,009.87 |
| February 10, 2008 | 1645 | $914.62 |
| March, 2008 | 1647 | $914.62 |
| March, 2008 | 1648 | $5,837.00 |
| April 5, 2008 | 1650 | $935.00 |
| May 8, 2008 | 1653 | $1,022.88 |
| June 9, 2008 | 1655 | $992.83 |
| July 7, 2008 | 1657 | $1,666.16 |
| August 9, 2008 | 1665 | $914.00 |
| August 30, 2008 | 1672 | $940.61 |
| September 10, 2008 | 1669 | $915.24 |
| November 5, 2008 | 1678 | $915.00 |
| December 9, 2008 | 1682 | $1,064.24 |
| January 8, 2009 | 1684 | $915.00 |
| February 9, 2009 | 1686 | $914.00 |
| February 26, 2009 | 1688 | $987.39 |
| April 9, 2009 | 1693 | $915.00 |
| May 9, 2009 | 1694 | $914.00 |
| June 6, 2009 | 1699 | $915.00 |
| July 8, 2009 | 1706 | $915.00 |

| Date | Check # | Amount |
|------|---------|--------|
| August 8, 2009 | 1708 | $1,900.00 |
| September 6, 2009 | 1712 | $1,408.03 |
| October 10, 2009 | 1725 | $915.00 |
| November 8, 2009 | 1746 | $914.24 |
| December 10, 2009 | 1008 | $1064.62 |
| January 6, 2010 | 1018 | $914.62 |
| February 10, 2010 | 1765 | $3964.06 |
| March 8, 2010 | 1766 | $915.00 |
| April 10, 2010 | 1769 | $1,475.23 |
| May 6, 2010 | 1778 | $914.62 |
| July 8, 2010 | 1786 | $1,200.70 |
| July 7, 2010 | 1791 | $1,850.86 |
| August 20, 2010 | 1795 | $1,850.86 |
| September 4, 2010 | 1794 | $2,163.11 |
| October 8, 2010 | 1797 | $914.62 |
| December 5, 2010 | 1800 | $1,658.13 |
| January 11, 2011 | 1804 | $915.00 |

**Account #xx1010**

| Date of Check | Check # | Amount of Payment |
|---------------|---------|-------------------|
| February, 2011 | 097 | $1000.85 |
| March 10, 2011 | 103 | $915.00 |
| May 2, 2011 | 105 | $960.00 |

| | | |
|---|---|---|
| June 8, 2011 | 107 | $978.23 |
| July 6, 2011 | 108 | $2023.04 |
| September 10, 2011 | 109 | $1000.14 |
| October 9, 2011 | 113 | $1236.59 |
| November 8, 2011 | 119 | $915.00 |
| December 9, 2011 | 121 | $1109.71 |
| January 8, 2012 | 122 | $944.94 |
| February 5, 2012 | 123 | $1471.84 |
| March 28, 2012 | 124 | $914.50 |

**Account #xx1814**

| Date of Check | Check # | Amount of Payment |
|---|---|---|
| November 7, 2010 | 1004 | $1,209.01 |
| April 10, 2011 | 1009 | $1,119.89 |
| August 10, 2011 | 1023 | $914.62 |
| March 3, 2012 | 1041 | $914.62 |

9.     Additional costs were incurred by **TOMAS YARRINGTON RUVALCABA** for the taxes, maintenance, upkeep, and repairs of Unit 1401. Using funds on deposit under front names of co-conspirators, **TOMAS YARRINGTON RUVALCABA** arranged for the payment of portions of these ongoing costs. At times, these costs were paid to Napoleon Rodriguez from a front account xx5217 in the name of a conspirator subtitled the "Hunting Account" as follows:

**Account #xx5217 Hunting Account**

| Date of Check | Check # | Amount of Payment |
|---|---|---|
| August 26, 2004 | 506 | $10,235.31 |
| August 26, 2004 | 507 | $1,283.09 |
| October 12, 2006 | 535 | $2,904.76 |
| December 4, 2007 | 543 | $9485.00 |
| December 4, 2007 | 545 | $1125.00 |
| February 26, 2008 | 553 | $3228.00 |
| February 26, 2008 | 554 | $5837.00 |
| May 7, 2008 | 593 | $1198.00 |
| July 8, 2008 | 598 | $1832.00 |
| September 25, 2008 | 610 | $1115.00 |
| November 11, 2008 | 614 | $2,440.00 |

10.     The payments to **TOMAS YARRINGTON RUVALCABA** by drug traffickers continued during his 6 year term of office as governor (February, 1999 - December, 2004) and after. During this time period the Gulf Cartel illegally imported into the United States and distributed multi-ton quantities of cocaine and marihuana.

11.     Beginning in the later part of 2007 and continuing into 2009 **TOMAS YARRINGTON RUVALCABA** became more directly involved with trafficking multi-ton quantities of cocaine. **TOMAS YARRINGTON RUVALCABA** agreed with representatives of the Gulf Cartel and the Beltran Leyva Cartel to arrange for unimpeded access for large cocaine loads to the Port of Veracruz, Mexico, in exchange for a percentage of each load. Pursuant to this

agreement large quantities of cocaine were brought into Mexico via boat for trans-shipment into the United States.

12. During the month of February, 2004, conspirators undertook a loan in the approximate amount of $230,000.00 as fronts for **TOMAS YARRINGTON RUVALCABA, to** enable his purchase of waterfront property on Windward Drive in Port Isabel, Texas. This loan was later sold in approximately 2005 and payments were made in later years to M&T Bank.

13. As per the loan, the conspirators undertook to make monthly payments in the amount of approximately $2,039.45.

14. During the latter part of 2004 a conspirator who held high elected office in Nuevo Laredo, Tamaulipas, Mexico, arranged to steal the equivalent of approximately 60 million pesos of public funds in Mexico. In approximately December of 2004, these funds were turned over to the control of **TOMAS YARRINGTON RUVALCABA**, who in turn entrusted them to a wealthy criminal. Portions of these stolen funds were then placed with other persons to help disguise **TOMAS YARRINGTON RUVALCABA's** control over the funds and their illegal origin.

15. **TOMAS YARRINGTON RUVALCABA,** assisted by a conspirator who served as the Subsecretary for Egresos (expenditures) for the Mexican State of Tamaulipas, in the administration of **TOMAS YARRINGTON RUVALCABA**, directed in the disposition of such stolen funds for **TOMAS YARRINGTON RUVALCABA**. On approximately January 21, 2005, $300,000.00, representing a portion of these funds, was transferred to account xx7535 at Inter National Bank. Such funds were used toward the purchase of a Sabreliner 60 airplane bearing a tail number of XBULF for **TOMAS YARRINGTON RUVALCABA**. Following its purchase **TOMAS YARRINGTON RUVALCABA** and other members of the conspiracy used the

Sabreliner 60 airplane extensively.

16.     During the spring of 2005, **TOMAS YARRINGTON RUVALCABA** directed that another portion of the stolen funds, being approximately 5 million pesos, be made available to **FERNANDO ALEJANDRO CANO MARTINEZ.** During the spring of 2005 and thereafter a conspirator caused the incorporation of limited partnerships and limited liability companies under Texas law. Such entities were established and used as business fronts so that the ownership, nature, source, and control of the proceeds of illegal activities could not be determined easily. Said conspirator and **FERNANDO ALEJANDRO CANO MARTINEZ** then used these entities to apply for fraudulent loans at banks in the Southern District of Texas.

17.     In March of 2005, a conspirator caused the formation of Premier International Holdings, Ltd., a limited partnership ("Premier"). The general partner of Premier was AGM Investments, LLC ("AGM"), formed by a conspirator in February, 2005. In December, 2005, Premier, through a conspirator, applied for and received a loan from Inter National Bank in McAllen, Texas, in the amount of $2,570,000.00 for the purchase of a 2005 Pilatus airplane having an FAA registration number of N679PE. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally guaranteed the loan.

18.     On or about April 15, 2005, a conspirator incorporated Pesquera Investments LP ("Pesquera"). The general partner and registered agent for Pesquera was RGC Development, LLC, established on February 15, 2005. On about May 2, 2005, a conspirator and another person opened a bank account for Pesquera at First National Bank, account # xxx0264.

19.     On or about May 6, 2005, a conspirator wired approximately $406,387.00 to the Pesquera account. In December of 2005, Pesquera, through a conspirator, applied for and

14

received a loan from First National Bank, loan #xx1806 in the amount of $2,850,000.00 for the development of real estate in Cameron County, Texas. This loan was personally and unconditionally guaranteed by **FERNANDO ALEJANDRO CANO MARTINEZ.** This loan went into default and was written off as a bad debt in May, 2009, with an outstanding balance of approximately $2,083,133.00.

20. In May of 2005, a conspirator incorporated SPI Ling and Marlin Townhome Project, LP ("SPI Ling"), and SPI Development Partners, LLC ("SPI Development"). SPI Development was the general partner of SPI Ling. Through a conspirator SPI Ling applied for and received a loan from Inter National Bank in McAllen, Texas, in the amount $610,000.00. In January, 2007, SPI Ling applied for a loan in the amount of $3,050,000.00 from Lone Star National Bank in Pharr, Texas, for the development of real estate on South Padre Island, Texas. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally guaranteed both loans.

21. In December, 2005, a conspirator caused the formation of Cantera-Parkway Development Partners of SA, LP ("Cantera"), and SA Cantera Development Partners, LLC ("SA Cantera"), which became the general partner Cantera. In February, 2006, through a conspirator, Cantera applied for and received a loan in the approximate amount of $6,650,000.00 from First National Bank, whose principal offices are in Hidalgo County, Texas. These funds were used for the purchase of approximately 46 acres of land located in Bexar County, Texas, in the Western District of Texas. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally signed as a guarantor of the loan. Further, through **FERNANDO ALEJANDRO CANO MARTINEZ,** Materiales y Construcciones Villa de Aguajo, S.A. de C.V.

15

guaranteed the loan.

22.    In June of 2006, a conspirator caused the formation of Culebra 179 Acre Residential Development, LP (Culebra 179"), and in July, 2006, caused the formation of Culebra SA 179 Management LLC, which served as the general partner of Culebra 179. Through a conspirator, Culebra 179 applied for and received a loan from Falcon International Bank, Laredo, Texas, in the amount of $3,626,000 toward the purchase of approximately 179 acres of land off of Culebra Road in Bexar County, in the Western District of Texas. Culebra 179 completed the purchase of this land in July, 2006. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally signed as a guarantor of the loan.

23.    In August of 2006 a conspirator caused the formation of Culebra SA 104 Acres Residential Partnership, LP ("Culebra 104") and Culebra SA 104 Management LLC, which served as the general manager of Culebra 104.   Through a conspirator Culebra 104 applied for a loan from Falcon International Bank in the amount of $2,874,000 toward the purchase of approximately 104 acres of land off of Culebra Road in Bexar County. Culebra 104 completed the purchase of this land in August, 2006. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally signed as a guarantor of the loan.

24.    During the course of the conspiracy, a conspirator established various bank accounts in the Republic of Mexico.   These included accounts at HSBC, Scotia Bank, BBVA Bancomer, Banamex, and Banregio.   From 2007 and continuing into 2009, tens of millions of Mexican pesos were deposited into these accounts and then transferred to an account at Monex, a money transmitter, in Mexico.

25.    Upon deposit at Monex, the funds were then transferred to accounts held in the

United States. These accounts included account xx6539 in the name of Premier International Holdings at Inter National Bank in McAllen, Texas. This account received such transfers in dollars from Monex on or about the following dates:

| Date | Approximate Amount |
| --- | --- |
| June, 2008 | $99,272.55 |
| September, 2008 | $99,850.00 |
| December, 2008 | $147,492.63 |
| March, 2009 | $100,000.00 |
| June, 2009 | $50,000.00 |
| July, 2009 | $49,272.55 |

26.     In this same manner, funds were transferred by the conspirator from Monex to account xx2879 in the name of Cantera Parkway Development Partners of SA at First National Bank. This account received such transfers in dollars on or about the following dates:

| Date | Approximate Amount |
| --- | --- |
| June, 2008 | $315,000.00 |
| July, 2008 | $100,000.00 |
| August, 2008 | $100,000.00 |
| September, 2008 | $312,500.00 |
| October, 2008 | $100,000.00 |
| November, 2008 | $100,000.00 |
| December, 2008 | $240,000.00 |
| February, 2009 | $50,000.00 |

| April, 2009 | $270,000.00 |
| May, 2009 | $45,000.00 |
| July, 2009 | $210,700.00 |
| September, 2009 | $210,000.00 |
| December, 2009 | $210,000.00 |

27. Other persons and entities transferred additional funds into account xx2879 in the name of Cantera Parkway Development Partners of SA at First National Bank, Edinburg, Texas. These additional transfers into this account exceeded $1,500,000.00 and included transfers from Mexican companies bearing the names of GMC S.A.de C.V. and Expide Technologia, S.A. de C.V.

28. Another Cantera account was established at First National Bank in April, 2010, bearing account # xx6734. From the time of the opening of this account through April, 2012, transfers and deposits into this account exceeded $3,000,000.00.

29. A conspirator established account xx6749 in the name of SPI Ling at Lone Star National Bank in Pharr, Texas. In May of 2008, Monex transferred $100,000.00 to this account.

30. In addition to the transfers of funds from Monex in Mexico to accounts in the names of entities in the United States whose loans **FERNANDO ALEJANDRO CANO MARTINEZ** had guaranteed, there were other transfers of money into these accounts.

31. **TOMAS YARRINGTON RUVALCABA** and **FERNANDO ALEJANDRO CANO MARTINEZ** worked together and with others to acquire and hold real estate for **TOMAS YARRINGTON RUVALCABA** in Mexico in a disguised manner so that **TOMAS YARRINGTON RUVALCABA's** secret ownership of the real estate could not be easily

18

detected. The real estate included the Hacienda San Juan that was developed into an exclusive hunting resort in the State of Tamaulipas, Mexico.

32. During the course of this conspiracy **FERNANDO ALEJANDRO CANO MARTINEZ** was the chief executive officer and co-owner of a construction firm Materiales y Construcciones Villas de Aguayo, S.A de C.V. with its principal place of business in Ciudad Victoria, Tamaulipas. This firm received significant public work contracts in the State of Tamaulipas during **TOMAS YARRINGTON RUVALCABA's** term as governor. **FERNANDO ALEJANDRO CANO MARTINEZ** in turn paid bribes to **TOMAS YARRINGTON RUVALCABA.** The bribes included the acquisition of ranches and other real estate in Mexico which **FERNANDO ALEJANDRO CANO MARTINEZ** acquired for **TOMAS YARRINGTON RUVALCABA** using front names.

33. Starting in 2004 a conspirator established various bank accounts at First National Bank, including accounts xx1407, xx9425, xx3621, xx5217, and xx1637. These accounts were funded in part from proceeds of assets of **TOMAS YARRINGTON RUVALCABA** held under names other than his own. These accounts were used as fronts for the payment of expenses for **TOMAS YARRINGTON RUVALCABA**, and for the acquisition and support of assets in nominee names in the United States. At times conspirators engaged in structured transactions involving various of these accounts to evade the filing of currency transaction reports with the United States.

34. Such structuring included the issuance and use of checks by conspirators, and cash withdrawals to conspirators, drawn on account xx5217 at First National Bank on or about the following dates:

19

| Date | Amount |
|------|--------|
| January 28, 2008 | $10,000.00 |
| February 15, 2008 | $10,000.00 |
| February 15, 2008 | $10,000.00 |
| February 15, 2008 | $10,000.00 |
| February 29, 2008 | $9,000.00 |
| February 29, 2008 | $9,000.00 |
| March 6, 2008 | $9,000.00 |
| March 6, 2008 | $9,000.00 |
| March 6, 2008 | $10,000.00 |
| March 7, 2008 | $9,000.00 |
| March 7, 2008 | $9,000.00 |
| March 10, 2008 | $9,000.00 |
| March 10, 2008 | $9,000.00 |
| March 11, 2008 | $9,000.00 |
| March 11, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 13, 2008 | $9,000.00 |
| March 13, 2008 | $9,000.00 |

| | |
|---|---|
| March 13, 2008 | $9,000.00 |
| March 13, 2008 | $9,000.00 |
| March 27, 2008 | $5,000.00 |
| March 27, 2008 | $2,000.00 |
| March 31, 2008 | $5,000.00 |
| April 9, 2008 | $8,000.00 |
| April 10, 2008 | $8,500.00 |
| April 15, 2008 | $9,000.00 |
| April 16, 2008 | $5,000.00 |
| April 18, 2008 | $5,000.00 |
| May 2, 2008 | $6,000.00 |
| May 2, 2008 | $6,000.00 |
| May 5, 2008 | $6,000.00 |
| May 7, 2008 | $3,000.00 |
| May 7, 2008 | $9,000.00 |
| May 8, 2008 | $9,000.00 |
| August 12, 2008 | $5000.00 |
| August 13, 2008 | $8000.00 |
| August 29, 2008 | $8000.00 |
| September 2, 2008 | $9000.00 |
| September 11, 2008 | $9000.00 |

35a.    Such structuring included the deposit of United States currency into account

xx2779 opened in the name of a conspirator at First National Bank on or about the following dates:

| Date | Amount |
| --- | --- |
| January 20, 2005 | $9,200.00 |
| January 20, 2005 | $10,000.00 |
| January 21, 2005 | $7,000.00 |
| January 25, 2005 | $10,000.00 |
| January 27, 2005 | $10,000.00 |
| March 3, 2005 | $6,400.00 |
| March 4, 2005 | $8,000.00 |
| April 4, 2005 | $7,700.00 |
| April 4, 2005 | $9,500.00 |
| April 6, 2005 | $8,000.00 |
| November 22, 2005 | $9,700.00 |
| November 5, 2009 | $9,500.00 |
| November 6, 2009 | $3,000.00 |
| November 19, 2009 | $6,500.00 |

35b.     Such structuring included the issuance and use of checks by conspirators, and cash withdrawals by conspirators, drawn on account xx3621 at First National Bank on or about the following dates:

| Date | Amount |
| --- | --- |
| September 5, 2006 | $8,000.00 |
| October 17, 2006 | $8,000.00 |

| | |
|---|---|
| October 19, 2006 | $6,000.00 |
| October 20, 2006 | $6,000.00 |
| November 1, 2006 | $9,000.00 |
| November 3, 2006 | $9,000.00 |
| November 6, 2006 | $9,000.00 |
| November 10, 2006 | $9,000.00 |
| June 2, 2008 | $9,000.00 |
| June 2, 2008 | $9,000.00 |
| June 3, 2008 | $7,000.00 |
| June 11, 2008 | $9,000.00 |
| June 16, 2008 | $6,000.00 |
| June 23, 2008 | $6,000.00 |
| June 24, 2008 | $5,000.00 |
| June 24, 2008 | $4,000.00 |
| June 26, 2008 | $8,000.00 |
| July 11, 2008 | $8,000.00 |
| July 15, 2008 | $8,000.00 |
| July 16, 2008 | $8,000.00 |
| July 17, 2008 | $8,000.00 |
| July 22, 2008 | $8,000.00 |
| July 22, 2008 | $9,000.00 |
| July 23, 2008 | $9,000.00 |

| | |
|---|---|
| July 25, 2008 | $9,000.00 |
| July 25, 2008 | $9,000.00 |
| July 25, 2008 | $9,000.00 |
| July 29, 2008 | $6,000.00 |
| July 31, 2008 | $9,000.00 |
| August 1, 2008 | $9,000.00 |
| August 4, 2008 | $9,000.00 |
| August 4, 2008 | $9,000.00 |
| August 5, 2008 | $4,500.00 |
| August 25, 2010 | $8,000.00 |
| September 22, 2010 | $8,000.00 |

36. Starting in 2005 and thereafter, lands acquired in the names of conspirators in Mexico were pledged as collateral for bank loans from First National Bank. Portions of the proceeds of these loans were then used to acquire additional ranch land in Mexico for **TOMAS YARRINGTON RUVALCABA** along with land in the United States.

37. **TOMAS YARRINGTON RUVALCABA** also caused and directed that fraudulent loans be established to acquire financing for the purchase of residences in Texas and a 2007 Chevrolet Suburban. Pursuant to such directions and agreements, a loan was applied for at First National Bank, loan #xx0316, in approximately July of 2004 in the initial amount of $200,000.00, and renewed thereafter, for the construction of a residence to be titled in a front name. The documents submitted to First National Bank contained false statements.

38. During the spring of 2008 **TOMAS YARRINGTON RUVALCABA** caused and

directed that a loan be established at First National Bank, loan #xx5587, in the amount of $150,000.00 for the purchase of a residence to be titled in a front name. The total amount invested in the acquisition and furnishing of both residences exceeded $750,000.00.

39. In December of 2006 **TOMAS YARRINGTON RUVALCABA** caused and directed that a loan to be established at Capital One Finance, in the amount of approximately $34,889.63 for the purchase of a 2007 Chevrolet Suburban.

Violation: Title 18, United States Code, Section 1962(d)

## COUNT TWO

That from on or about January 1, 1998, up the date of the return of this indictment, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendant

### TOMAS YARRINGTON RUVALCABA

did knowingly combine, conspire, confederate, and agree with diverse other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 21, United States Code, Section 959, to-wit: to distribute controlled substances under schedule I and schedule II, knowing that such substances will be unlawfully imported into the United States. The amount involved in the conspiracy exceeded 5 kilograms of cocaine and 1,000 kilograms of marihuana.

Violation: Title 21, United States Code, Section 963

## COUNT THREE

That from on or about January 1, 1998, up to the date of the return of this indictment, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendants

### TOMAS YARRINGTON RUVALCABA
and

**FERNANDO ALEJANDRO CANO MARTINEZ**

did knowingly combine, conspire, confederate, and agree together and with diverse other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to-wit:

a)  to transport, transmit, and transfer, and attempt to transport, transmit, and transfer monetary instruments and funds involving the proceeds of specified unlawful activity to a place in the United States from or through a place outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part  to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(I), and

b)  to conduct and attempt to conduct financial transactions which in fact involve the proceeds of specified unlawful activity, knowing that the property involved in the transactions represents the proceeds of some form of unlawful activity and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18 United States Code, Section 1956(a)(1)(B)(i), and

c)  to avoid a transaction reporting requirement under Federal law in violation of Title 18 United States Code, Section 1956(a)(1)(B)(ii).

## Means and Manner

It was a part of this conspiracy that conspirators would establish limited partnerships and

limited liability companies under Texas law.

It was a part of this conspiracy that conspirators would establish bank accounts in their own names and in the names of the limited partnerships and limited liability companies to receive, hold, and disburse funds.

It was a part of this conspiracy that funds would be transmitted by wire and other means between Mexico and the United States.

It was a part of this conspiracy that such business entities and individual conspirators would apply for loans from Texas banks and elsewhere and would purchase assets to be titled in front names.

It was a part of this conspiracy that persons would receive, hold, and transfer large amounts of United States currency.

It was a part of this conspiracy that such business entities and individual persons would act as fronts, strawmen, and "prestanombres" [literally, 'lent names'] for the true owners of the assets. Violation: Title 18, United States Code, Section 1956(h).

### COUNT FOUR

That from on or about January 1, 2004, up to the date of the return of this indictment, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendants

**TOMAS YARRINGTON RUVALCABA**
and
**FERNANDO ALEJANDRO CANO MARTINEZ**

did knowingly combine, conspire, confederate, and agree together and with diverse other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1014, to-wit: to knowingly make false statements to

27

institutions, the deposits of which are insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the actions of said institutions upon application for and extension of loans.

**OVERT ACTS**

Pursuant to this conspiracy and in furtherance thereof, the following and other overt acts were committed in the Southern District of Texas and elsewhere:

1. During the year 2004 **TOMAS YARRINGTON RUVALCABA** caused and directed that a loan be sought at First National Bank, for the construction of a residence to be titled in a front name in Hidalgo County, Texas. The loan was granted under loan number xx0316 in the original amount of $200,000.00 and was later extended by the First National Bank.

2. As part of the loan process financial information was presented to the bank.

3. Starting in the spring of 2005 and thereafter a conspirator caused the incorporation of limited partnerships and limited liability companies under Texas law. Such companies were established and used as business fronts so that the ownership, nature, source, and control of the proceeds of illegal activities could not easily be determined. Said conspirator and **FERNANDO ALEJANDRO CANO MARTINEZ** then used these entities to apply for fraudulent loans at banks in the Southern District of Texas.

4. In March, 2005, a conspirator caused the formation of Premier International Holdings, Ltd., a limited partnership ("Premier"). The general partner of Premier was AGM, formed by a conspirator in February, 2005. In December, 2005, Premier, through a conspirator, applied for and received a loan from Inter National Bank in McAllen, Texas, in the amount of $2,570,000.00 for the purchase of a 2005 Pilatus airplane having an FAA registration number of

28

N679PE. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally guaranteed the loan.

5.      In April of 2005, **FERNANDO ALEJANDRO CANO MARTINEZ**, with the assistance of conspirators, caused the formation of Pesquera Investments LP, a limited partnership. The general partner of Pesquera was RGC Development, LLC. Thereafter, in December, 2005, Pesquera applied for and received a loan from First National Bank in the amount of $2,850,000.00.

6.      In May, 2005, a conspirator incorporated SPI Ling and Marlin Townhome Project, LP ("SPI Ling"), and SPI Development Partners, LLC ("SPI Development"). SPI Development was the general partner of SPI Ling. Through a conspirator SPI Ling applied for and received a loan from Inter National Bank in McAllen, Texas in the amount of $610,000.00. In January, 2007, SPI Ling applied for a loan in the amount of $3,050,000.00 from Lone Star National Bank in Pharr, Texas, for the development of real estate on South Padre Island, Texas. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally guaranteed both loans.

7.      In December, 2005, a conspirator caused the formation of Cantera-Parkway Development Partners of SA, LP ("Cantera"), and SA Cantera Development Partners, LLC ("SA Cantera"), which became the general partner of Cantera. In February, 2006, through a conspirator, Cantera applied for and received a loan in the approximate amount of $6,650,000.00 from First National Bank, whose principal offices are in Hidalgo County, Texas. These funds were used for the purchase of approximately 46 acres of land located in Bexar County, Texas, in the Western District of Texas. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally signed as a guarantor of the loan. Further, through **FERNANDO ALEJANDRO CANO MARTINEZ**, Materiales y Construcciones Villa de Aguajo, S.A. de C.V.

guaranteed the loan.

8.    In June, 2006, a conspirator caused the formation of Culebra 179 Acre Residential Development, LP (Culebra 179"), and in July, 2006, caused the formation of Culebra SA 179 Management LLC, which served as the general partner of Culebra 179. Through a conspirator, Culebra 179 applied for and received a loan in the amount of $3,626,000.00 from Falcon International Bank, Laredo, Texas, toward the purchase of approximately 179 acres of land off of Culebra Road in Bexar County, in the Western District of Texas. Culebra 179 completed the purchase of this land in July, 2006. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally signed as a guarantor of the loan.

9.    In August of 2006 a conspirator caused the formation of Culebra SA 104 Acres Residential Partnership, LP ("Culebra 104") and Culebra SA 104 Management LLC, which served as the general manager of Culebra 104. Through a conspirator Culebra 104 applied for a loan in the amount of $2,874,000.00 from Falcon International Bank toward the purchase of approximately 104 acres of land off of Culebra Road in Bexar County. Culebra 104 completed the purchase of this land in August, 2006. **FERNANDO ALEJANDRO CANO MARTINEZ** personally and unconditionally signed as a guarantor of the loan.

10.    During approximately 2007 **TOMAS YARRINGTON RUVALCABA** became concerned about his assets that were "parked" under the control of **FERNANDO ALEJANDRO CANO MARTINEZ. TOMAS YARRINGTON RUVALCABA**'s concern was that due to **FERNANDO ALEJANDRO CANO MARTINEZ'** marital problems, **TOMAS YARRINGTON RUVALCABA** could lose such assets. **TOMAS YARRINGTON RUVALCABA** voiced these concerns. In 2007 and thereafter **FERNANDO ALEJANDRO**

30

**CANO MARTINEZ** and others undertook to insulate assets under the control of **FERNANDO ALEJANDRO CANO MARTINEZ** from loss in a divorce action.

11.     During the course of the conspiracy, a conspirator established various bank accounts in the Republic of Mexico. These included accounts at HSBC, Scotia Bank, BBVA Bancomer, Banamex, and Banregio. From 2007 and continuing into 2009, tens of millions of Mexican pesos were deposited into these accounts and then transferred to an account at Monex, a money transmitter, in Mexico.

12.     Upon deposit at Monex, the funds were then transferred to accounts held in the United States. These accounts included account xx6539 in the name of Premier International Holdings at Inter National Bank in McAllen, Texas. This account received such transfers in dollars from Monex as follows:

| Date | Approximate Amount |
| --- | --- |
| June, 2008 | $99,272.55 |
| September, 2008 | $99,850.00 |
| December, 2008 | $147,492.63 |
| March, 2009 | $100,000.00 |
| June, 2009 | $50,000.00 |
| July, 2009 | $49,272.55 |

13.     In this same manner, funds were transferred by the unindicted co-conspirator from Monex to account xx2879 in the name of Cantera Parkway Development Partners of SA at First National Bank. This account received such transfers in dollars as follows:

| Date | Approximate Amount |
| --- | --- |

31

| | |
|---|---|
| June, 2008 | $315,000.00 |
| July, 2008 | $100,000.00 |
| August, 2008 | $100,000.00 |
| September, 2008 | $312,500.00 |
| October, 2008 | $100,000.00 |
| November, 2008 | $100,000.00 |
| December, 2008 | $240,000.00 |
| February, 2009 | $50,000.00 |
| April, 2009 | $270,000.00 |
| May, 2009 | $45,000.00 |
| July, 2009 | $210,700.00 |
| September, 2009 | $210,000.00 |
| December, 2009 | $210,000.00 |

14. Other persons and entities transferred additional funds into account xx2879 in the name of Cantera Parkway Development Partners of SA at First National Bank, Edinburg, Texas. These additional transfers into this account exceeded $1,500,000.00 and included transfers from Mexican companies bearing the names of GMC S.A.de C.V. and Expide Technologia, S.A. de C.V.

15. Another Cantera account was established at First National Bank in April, 2010, bearing account # xx6734. From the time of the opening of this account through April, 2012, transfers and deposits into this account exceeded $3,000,000.00.

16. A conspirator established account xx6749 in the name of SPI Ling at Lone Star

National Bank in Pharr, Texas. In May of 2008, Monex transferred $100,000.00 to this account.

17.    In addition to the transfers of funds from Monex in Mexico to accounts in the names of entities in the United States whose loans **FERNANDO ALEJANDRO CANO MARTINEZ** had guaranteed, there were other transfers of money into these accounts.

18.    During the spring of 2008 **TOMAS YARRINGTON RUVALCABA** caused and directed that a loan be established at First National Bank, loan #xx5587, in the amount of $150,000.00 for the purchase of a residence to be titled in a front name.

Violation: Title 18, United States Code, Section 371.

## COUNT FIVE

That from on or about January 1, 2004, up to the date of the return of this indictment, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendants

**TOMAS YARRINGTON RUVALCABA**
and
**FERNANDO ALEJANDRO CANO MARTINEZ**

did knowingly combine, conspire, confederate, and agree together and with diverse other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1344, to-wit: to knowingly execute and attempt to execute a scheme and artifice to obtain moneys, funds, credits, and assets owned by and under the custody of financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation, by mean of false and fraudulent pretenses, representations and promises.

Violation: Title 18, United States Code, Section 1349.

## COUNT SIX

That in or about December, 2005, in the Southern District of Texas and elsewhere, and in

the jurisdiction of this Court the Defendant

## FERNANDO ALEJANDRO CANO MARTINEZ

knowingly executed and attempted to execute a scheme and artifice to obtain moneys, funds, credits, and assets owned by and under the custody of a financial institution, Inter National Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises, in connection with a loan application in the name of Premier International Holdings, Ltd. for $2,570,000.00.

Violation: Title 18, United States Code, Sections 1344 and 2.

## COUNT SEVEN

That in about February, 2006, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendant

## FERNANDO ALEJANDRO CANO MARTINEZ

knowingly executed and attempted to execute a scheme and artifice to obtain moneys, funds, credits, and assets owned by and under the custody of a financial institution, First National Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises, in connection with a loan application in the name of Cantera-Parkway Development Partners of SA, LP for $6,650,000.00

Violation: Title 18, United States Code, Sections 1344 and 2.

## COUNT EIGHT

That in about July, 2004, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendant

## TOMAS YARRINGTON RUVALCABA

knowingly executed and attempted to execute a scheme and artifice to obtain moneys, funds, credits, and assets owned by and under the custody of a financial institution, First National Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises, in connection with a loan application #xx0316 in the approximate amount of $200,000.00

Violation: Title 18, United States Code, Sections 1344 and 2.

## COUNT NINE

That in about January, 2007, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendant

## FERNANDO ALEJANDRO CANO MARTINEZ

knowingly executed and attempted to execute a scheme and artifice to obtain moneys, funds, credits, and assets owned by and under the custody of a financial institution, Lone Star National Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises, in connection with a loan application in the name of SPI Ling and Marlin Townhome Project, LP for $3,050,000.00

Violation: Title 18, United States Code, Sections 1344 and 2.

## COUNT TEN

That in about April, 2008, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendant

## TOMAS YARRINGTON RUVALCABA

knowingly executed and attempted to execute a scheme and artifice to obtain moneys, funds, credits, and assets owned by and under the custody of a financial institution, First National Bank,

the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations and promises, in connection with a loan application for loan #xx5587 in the approximate amount of $150,000.00.

Violation: Title 18, United States Code, Sections 1344 and 2

### .COUNT ELEVEN

That from on or about January 1, 2005, up to on or about January 1, 2012, in the Southern District of Texas and elsewhere, and in the jurisdiction of this Court the Defendant

### TOMAS YARRINGTON RUVALCABA

did knowingly combine, conspire, confederate, and agree together and with diverse other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 31, United States Code, Section 5324,  to-wit: to cause or attempt to cause a domestic financial institution to fail to file a required report.

### OVERT ACTS

Pursuant to this conspiracy and in furtherance thereof, the following and other overt acts were committed in the Southern District of Texas and elsewhere:

1.     During the course of this conspiracy the conspirators made use of checks in the amount of $10,000.00 and less, a practice referred to as "structuring." Such structuring included the issuance and use of checks by conspirators, and cash withdrawals by conspirators, drawn on account xx5217 at First National Bank or about the following dates:

| Date | Amount |
|------|--------|
| January 28, 2008 | $10,000.00 |
| February 15, 2008 | $10,000.00 |

| | |
|---|---|
| February 15, 2008 | $10,000.00 |
| February 15, 2008 | $10,000.00 |
| February 29, 2008 | $9,000.00 |
| February 29, 2008 | $9,000.00 |
| March 6, 2008 | $9,000.00 |
| March 6, 2008 | $9,000.00 |
| March 6, 2008 | $10,000.00 |
| March 7, 2008 | $9,000.00 |
| March 7, 2008 | $9,000.00 |
| March 10, 2008 | $9,000.00 |
| March 10, 2008 | $9,000.00 |
| March 11, 2008 | $9,000.00 |
| March 11, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 12, 2008 | $9,000.00 |
| March 13, 2008 | $9,000.00 |
| March 13, 2008 | $9,000.00 |
| March 13, 2008 | $9,000.00 |
| March 13, 2008 | $9,000.00 |
| March 27, 2008 | $5,000.00 |

| Date | Amount |
|------|--------|
| March 27, 2008 | $2,000.00 |
| March 31, 2008 | $5,000.00 |
| April 9, 2008 | $8,000.00 |
| April 10, 2008 | $8,500.00 |
| April 15, 2008 | $9,000.00 |
| April 16, 2008 | $5,000.00 |
| April 18, 2008 | $5,000.00 |
| May 2, 2008 | $6,000.00 |
| May 2, 2008 | $6,000.00 |
| May 5, 2008 | $6,000.00 |
| May 7, 2008 | $3,000.00 |
| May 7, 2008 | $9,000.00 |
| May 8, 2008 | $9,000.00 |
| August 12, 2008 | $5000.00 |
| August 13, 2008 | $8000.00 |
| August 29, 2008 | $8000.00 |
| September 2, 2008 | $9000.00 |
| September 11, 2008 | $9000.00 |

2. One or more conspirators deposited and caused the deposit of the following amounts of United States currency into account #xx2779 at First National Bank on or about the following dates:

Date                    Amount

| | |
|---|---|
| January 20, 2005 | $9,200.00 |
| January 20, 2005 | $10,000.00 |
| January 21, 2005 | $7,000.00 |
| January 25, 2005 | $10,000.00 |
| January 27, 2005 | $10,000.00 |
| March 3, 2005 | $6,400.00 |
| March 4, 2005 | $8,000.00 |
| April 4, 2005 | $7,700.00 |
| April 4, 2005 | $9,500.00 |
| April 6, 2005 | $8,000.00 |
| November 22, 2005 | $9,700.00 |
| November 5, 2009 | $9,500.00 |
| November 6, 2009 | $3,000.00 |
| November 19, 2009 | $6,500.00 |

3.     Such structuring included the issuance and use of checks by conspirators, and cash withdrawals by conspirators, drawn on account xx3621 at First National Bank on or about the following dates:

| Date | Amount |
|---|---|
| September 5, 2006 | $8,000.00 |
| October 17, 2006 | $8,000.00 |
| October 19, 2006 | $6,000.00 |
| October 20, 2006 | $6,000.00 |

| | |
|---|---|
| November 1, 2006 | $9,000.00 |
| November 3, 2006 | $9,000.00 |
| November 6, 2006 | $9,000.00 |
| November 10, 2006 | $9,000.00 |
| June 2, 2008 | $9,000.00 |
| June 2, 2008 | $9,000.00 |
| June 3, 2008 | $7,000.00 |
| June 11, 2008 | $9,000.00 |
| June 16, 2008 | $6,000.00 |
| June 23, 2008 | $6,000.00 |
| June 24, 2008 | $5,000.00 |
| June 24, 2008 | $4,000.00 |
| June 26, 2008 | $8,000.00 |
| July 11, 2008 | $8,000.00 |
| July 15, 2008 | $8,000.00 |
| July 16, 2008 | $8,000.00 |
| July 17, 2008 | $8,000.00 |
| July 22, 2008 | $8,000.00 |
| July 22, 2008 | $9,000.00 |
| July 23, 2008 | $9,000.00 |
| July 25, 2008 | $9,000.00 |
| July 25, 2008 | $9,000.00 |

| | |
|---|---|
| July 25, 2008 | $9,000.00 |
| July 29, 2008 | $6,000.00 |
| July 31, 2008 | $9,000.00 |
| August 1, 2008 | $9,000.00 |
| August 4, 2008 | $9,000.00 |
| August 4, 2008 | $9,000.00 |
| August 5, 2008 | $4,500.00 |
| August 25, 2010 | $8,000.00 |
| September 22, 2010 | $8,000.00 |

4. During the course of this conspiracy large amounts of United States currency were transferred between and among various conspirators.

Violation: Title 18, United States Code, Section 371.

## NOTICES OF FORFEITURE

### NOTICE OF FORFEITURE PURSUANT TO
### TITLE 18, UNITED STATES CODE, SECTION 1963

1. The allegations contained in Count One are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 1963.

2. The United States of America gives notice to the defendants, **TOMAS YARRINGTON RUVALCABA** and **FERNANDO ALEJANDRO CANO MARTINEZ,** that, upon conviction of an offense in violation of Title 18, United States Code, Section 1962 and pursuant to Title 18, United States Code, Section 1963, the United States of America shall forfeit, irrespective of any provision of state law:

41

a. any interest acquired or maintained in violation of Title 18, United States Code, Section 1962;

b. any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962;

c. any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of Title 18, United States Code, Section 1962.

3. The property to be forfeited includes, but is not limited to, the following:

a. 2005 Pilatus aircraft, with all engines and equipment attached thereto, and all logs and documents contained therein, said aircraft bearing tail number N679 PE;

b. 46.175 acre tract of land, more or less, located in Bexar County, Texas, more particularly described as:

**TRACT 1:** That certain 46.175 acre tract of land being all of that conveyed in Special Warranty Deed to Tally-Ho Venture, Ltd., recorded in Volume 11819, Pages 1848-1856 of the Official Public Records of Real Property of Bexar County, Texas, out of the Charles S. Seidenschnur Survey No. 410, Abstract 1222, County Block 4725 of Bexar County, Texas, now in New City Blocks 14859 and 34725 of the City of San Antonio, Bexar County, Texas,   SAVE AND EXCEPT that certain 1.00 acre, or 43,577 square feet more or less tract of land; and

**TRACT 2:** An easement to Tract 1, said easement being 0.1383 acres, and being 16 feet wide, created, granted and described by Sanitary Sewer Easement Agreement by and between La Cantera Development Company, as grantor, and Camp Bullis, Ltd., as grantee, dated July 29, 2003, recorded in Volume 10189, Page 1718, Official Public Records of Real Property of Bexar County, Texas,

c. A residence on Windward Drive, Port Isabel, Texas, more particularly described as: Lot One (1), Block One (1), RACE SUBDIVISION, City of Port Isabel, Cameron County, Texas, according to the Map or Plat thereof recorded in Cabinet 1, Slot 1681-B, Map Records of Cameron County, Texas.

d. A forfeiture money judgment in the approximate amount of

$50,000,000.00 for which the defendants may be jointly and severally liable.

4. If any of the property described above, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred, or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 18, United States Code, Section 1963(m).

## NOTICE OF FORFEITURE PURSUANT TO
## TITLE 21, UNITED STATES CODE, SECTIONS 970 AND 853

1. The allegations contained in Count Two are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 970 which incorporates Title 21, United States Code, Section 853.

2. The United States of America gives notice to the defendant, **TOMAS YARRINGTON RUVALCABA,** that, upon conviction of an offense in violation of Title 21, United States Code, Section 963, and pursuant to Title 18, United States Code, Section 853, the United States of America shall forfeit:

      a.      any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation; and

      b.      any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

3. The property to be forfeited includes, but is not limited to, the following:

    a.     2005 Pilatus aircraft, with all engines and equipment attached thereto, and all logs and documents contained therein, said aircraft bearing tail number N679 PE;

    b.     46.175 acre tract of land, more or less, located in Bexar County, Texas, more particularly described as:

            **TRACT 1:**    That certain 46.175 acre tract of land being all of that conveyed in Special Warranty Deed to Tally-Ho Venture, Ltd., recorded in Volume 11819, Pages 1848-1856 of the Official Public Records of Real Property of Bexar County, Texas, out of the Charles S. Seidenschnur Survey No. 410, Abstract 1222, County Block 4725 of Bexar County, Texas, now in New City Blocks 14859 and 34725 of the City of San Antonio, Bexar County, Texas, SAVE AND EXCEPT that certain 1.00 acre, or 43,577 square feet more or less tract of land; and

            **TRACT 2:**    An easement to Tract 1, said easement being 0.1383 acres, and being 16 feet wide, created, granted and described by Sanitary Sewer Easement Agreement by and between La Cantera Development Company, as grantor, and Camp Bullis, Ltd., as grantee, dated July 29, 2003, recorded in Volume 10189, Page 1718, Official Public Records of Real Property of Bexar County, Texas,

    c.     A residence on Windward Drive, Port Isabel, Texas, more particularly described as: Lot One (1), Block One (1), RACE SUBDIVISION, City of Port Isabel, Cameron County, Texas, according to the Map or Plat thereof recorded in Cabinet 1, Slot 1681-B, Map Records of Cameron County, Texas.

    d.     A forfeiture money judgment in the approximate amount of $ $50,000,000.00 for which the defendants may be jointly and severally liable.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred, or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF FORFEITURE PURSUANT TO TITLE 18, UNITED STATES CODE, SECTIONS 981 AND 982, AND TITLE 28, UNITED STATES CODE, SECTION 2461

1.   The allegations contained in Count Three are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461 in addition to Title 18, United States Code, Section 982(a)(1).

2.   The United States of America gives notice to the defendants, **TOMAS YARRINGTON RUVALCABA** and **FERNANDO ALEJANDRO CANO MARTINEZ,** that, upon conviction of an offense in violation of Title 18, United States Code, Section 1956 and pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, the United States of America shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1956, or a conspiracy to commit such offense.

3.   The United States of America gives notice to the defendants, **TOMAS YARRINGTON RUVALCABA** and **FERNANDO ALEJANDRO CANO MARTINEZ,** that, upon conviction of an offense in violation of Title 18, United States Code, Section 1956 and pursuant to Title 18, United States Code, Section 982(a)(1), the United States of America shall

forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

4. The property to be forfeited includes, but is not limited to, the following:

    a.     2005 Pilatus aircraft, with all engines and equipment attached thereto, and all logs and documents contained therein, said aircraft bearing tail number N679 PE;

    b.     46.175 acre tract of land, more or less, located in Bexar County, Texas, more particularly described as:

**TRACT 1:**     That certain 46.175 acre tract of land being all of that conveyed in Special Warranty Deed to Tally-Ho Venture, Ltd., recorded in Volume 11819, Pages 1848-1856 of the Official Public Records of Real Property of Bexar County, Texas, out of the Charles S. Seidenschnur Survey No. 410, Abstract 1222, County Block 4725 of Bexar County, Texas, now in New City Blocks 14859 and 34725 of the City of San Antonio, Bexar County, Texas, SAVE AND EXCEPT that certain 1.00 acre, or 43,577 square feet more or less tract of land; and

**TRACT 2:**     An easement to Tract 1, said easement being 0.1383 acres, and being 16 feet wide, created, granted and described by Sanitary Sewer Easement Agreement by and between La Cantera Development Company, as grantor, and Camp Bullis, Ltd., as grantee, dated July 29, 2003, recorded in Volume 10189, Page 1718, Official Public Records of Real Property of Bexar County, Texas,

    c.     A residence on Windward Drive, Port Isabel, Texas, more particularly described as: Lot One (1), Block One (1), RACE SUBDIVISION, City of Port Isabel, Cameron County, Texas, according to the Map or Plat thereof recorded in Cabinet 1, Slot 1681-B, Map Records of Cameron County, Texas.

    d.     A forfeiture money judgment in the approximate amount of $24,000,000.00 for which the defendants may be jointly and severally liable.

5. If any of the property described above, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

46

b.      has been transferred, or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF FORFEITURE PURSUANT TO
## TITLE 18, UNITED STATES CODE, SECTION 982

1. The allegations contained in Counts Four and Five are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2. The United States of America gives notice to the defendants, **TOMAS YARRINGTON RUVALCABA** and **FERNANDO ALEJANDRO CANO MARTINEZ,** that, upon conviction of an offense in violation of Title 18, United States Code, Sections 1014 or 1344, or a conspiracy to violate such sections and pursuant to Title 18, United States Code, Section 982(a)(2)(A), the United States of America shall forfeit any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation.

3. The property to be forfeited includes, but is not limited to, the following:

a.      2005 Pilatus aircraft, with all engines and equipment attached thereto, and all logs and documents contained therein, said aircraft bearing tail number N679 PE;

b.      46.175 acre tract of land, more or less, located in Bexar County, Texas, more particularly described as:

**TRACT 1:**    That certain 46.175 acre tract of land being all of that

47

conveyed in Special Warranty Deed to Tally-Ho Venture, Ltd., recorded in Volume 11819, Pages 1848-1856 of the Official Public Records of Real Property of Bexar County, Texas, out of the Charles S. Seidenschnur Survey No. 410, Abstract 1222, County Block 4725 of Bexar County, Texas, now in New City Blocks 14859 and 34725 of the City of San Antonio, Bexar County, Texas, SAVE AND EXCEPT that certain 1.00 acre, or 43,577 square feet more or less tract of land; and

**TRACT 2:** An easement to Tract 1, said easement being 0.1383 acres, and being 16 feet wide, created, granted and described by Sanitary Sewer Easement Agreement by and between La Cantera Development Company, as grantor, and Camp Bullis, Ltd., as grantee, dated July 29, 2003, recorded in Volume 10189, Page 1718, Official Public Records of Real Property of Bexar County, Texas,

c.  A residence on Windward Drive, Port Isabel, Texas, more particularly described as: Lot One (1), Block One (1), RACE SUBDIVISION, City of Port Isabel, Cameron County, Texas, according to the Map or Plat thereof recorded in Cabinet 1, Slot 1681-B, Map Records of Cameron County, Texas.

d.  A forfeiture money judgment in the approximate amount of $ 23,000,000.00 for which the defendants may be jointly and severally liable as to Count Four.

e.  A forfeiture money judgment in the approximate amount of $23,000,000.00 for which the defendants may be jointly and severally liable as to Count Five.

4.  If any of the property described above, as a result of any act or omission of the

defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred, or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

48

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF FORFEITURE PURSUANT TO
## TITLE 18, UNITED STATES CODE, SECTION 982

1. The allegations contained in Counts Six, Seven, and Nine are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2. The United States of America gives notice to the defendant, **FERNANDO ALEJANDRO CANO MARTINEZ,** that, upon conviction of an offense in violation of Title 18, United States Code, Section 1344, or a conspiracy to violate such section and pursuant to Title 18, United States Code, Section 982(a)(2)(A), the United States of America shall forfeit any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation.

3. The property to be forfeited includes, but is not limited to, the following:

    a.    A forfeiture money judgment in the approximate amount of $2,570,000 as to Count Six.

    b.    A forfeiture money judgment in the approximate amount of $6,650,000 as to Count Seven.

    c.    A forfeiture money judgment in the approximate amount of $3,050,000 as to Count Nine.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred, or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

### NOTICE OF FORFEITURE PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 982

1. The allegations contained in Counts Eight, and Ten are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2)(A).

2. The United States of America gives notice to the defendant, **TOMAS YARRINGTON RUVALCABA,** that, upon conviction of an offense in violation of Title 18, United States Code, Section 1344, or a conspiracy to violate such section and pursuant to Title 18, United States Code, Section 982(a)(2)(A), the United States of America shall forfeit any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation.

3. The property to be forfeited includes, but is not limited to, the following:

   a.  A forfeiture money judgment in the approximate amount of $200,000.00 as to Count Eight.

   b.  A forfeiture money judgment in the approximate amount of $150.000.00 as to Count Ten.

4. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred, or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF FORFEITURE PURSUANT TO
## TITLE 31, UNITED STATES CODE, SECTION 5317

1. The allegations contained in Count Eleven are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 31, United States Code, Section 5317.

2. The United States of America gives notice to the defendant, **TOMAS YARRINGTON RUVALCABA,** that, upon conviction of an offense in violation of Title 31, United States Code, Section 5324 and pursuant to Title 31, United States Code, Section 5317, the United States of America shall forfeit all property, real or personal, involved in the offense and any property traceable thereto.

3. The property to be forfeited includes, but is not limited to, the following:

a. A forfeiture money judgment in the approximate amount of $750,000.00.

4. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred, or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c).

A TRUE BILL

_____

FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
United States Attorney

Charles Lewis
Assistant United States Attorney

Julie Hampton
Assistant United States Attorney

Jody Young
Assistant United States Attorney